**In re Coleman K. MARKMAN and Roslyn Markman, Debtors.**

**Bankruptcy No. 880–00975–20.**

United States Bankruptcy Court,
E. D. New York,
at Westbury.

July 8, 1980.

Holland & Zinker, Smithtown, N. Y., for debtors; Edward Zinker, Smithtown, N. Y., of counsel.

Harold Cullen, Forest Hills, N. Y., trustee pro-se.

ROBERT JOHN HALL, Bankruptcy Judge.

## I.

The trustee has moved this Court for an order denying confirmation of the debtors' plan on the ground that the plan fails to comply with Bankruptcy Code sections 1322(c)[1], and 1325(a)(1).[2] For the reasons set forth below, the trustee's motion is denied.

## II.

The debtors have filed a plan under which they will "pay the sum of $5,400 to the trustee at the rate of $300 per month for eighteen months or sooner   .   .   .".". At the hearing on the confirmation of the debtors' plan the trustee objected to confirmation on the ground that the plan does not require the debtors to make payments over a three year period.

In determining whether the Court should grant the trustee's motion, the Court must look to Bankruptcy Code section 1325(a). For if the debtors' plan meets with the confirmation standards set forth in Bankruptcy Code section 1325(a), the Court must confirm the plan. *Collier on Bankruptcy* has stated that:

"The Bankruptcy Court, after conducting the hearing mandated by section 1324, must confirm any Chapter 13 plan, meeting or the criteria for confirmation prescribed by section 1325(a). The Code and its legislative history are emphatic *that confirmation is not discretionary with the Court once these criteria have been satisfied.*

5 *Collier on Bankruptcy*, ¶ 1325.01 (15th ed. 1979) (emphasis supplied). See also *In re Keckler*, 6 B.C.D. 14, 3 B.R. 155 (Bkrtcy.N. D.Ohio 1980).

Bankruptcy Code section 1325(a) provides, in pertinent part that:

Confirmation of plan

The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

---

**1.** 11 U.S.C. section 1322(c).

**2.** 11 U.S.C. section 1325(a)(1).

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

It is not disputed that, except for the trustee's objection to its length, the debtors' plan complies with the confirmation standards set forth in section 1325(a).

█ Indeed, from the statement filed by the debtors and their claims of exemption, it appears that unsecured creditors would receive nothing in a liquidation under chapter 7: [3]

The trustee's objection to confirmation on the ground that the plan calls for payments over a time period of less than three years falls under section 1325(a)(1). Section 1325(a)(1) requires that the debtors' plan comply with provisions of Chapter 13.

Bankruptcy Code Section 1322(c) provides that:

The plan may not provide for payments *over a period that is longer than three years*, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

11 U.S.C. section 1322(c). (Emphasis supplied)

The question is whether the phrase "over a period that is longer than three years" requires that a plan provide for payments over a period of at least three years, or whether it allows payments for three years or less. The legislative history supports the latter position.

"The plan may provide for full or partial payment of creditors, *over any period up to three years*, and with the court's approval, up to five years."

Report of the Committee of the Judiciary, Bankruptcy Law Revision, H.R. Rep. No. 95–595, 95th Cong., 1st Sess. ("House Report") 123 (1977), *reprinted in* [1978] U.S. Code Cong. & Admin.News, pp. 5787, 6084. (emphasis supplied).

Further, in discussing the granting of the so-called "hardship discharge", the House Report stated:

This [granting of discharge even though payments under the plan had not been completed] is an important change from present Chapter XIII, under which the debtor may not receive the so-called hardship discharge under any circumstances until three years after the commencement of performance under the plan. *The three year provision has placed an unnatural incentive for debtors to propose three year plans, no matter what their circumstances*, and to discharge [sic] use of chapter 13 in cases in which adequate performance could not be accomplished in three years. *Its elimination will permit the debtor and the court to tailor each plan to the individual circumstances of the case*, and to promote greater success under chapter 13 plans.

House Report, supra, at 125, *reprinted in* [1978] U.S.Code Cong. & Admin.News, p. 6086. (Emphasis supplied).

In addition, it must be noted that in drafting Chapter 13, Congress wished to

---

**3.** Creditors are not prejudiced when, as in the present case, they are paid more under the Chapter 13 plan than they would receive under a Chapter 7 liquidation. House Report, supra, at 123–124, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 6084–6085 *cf.* 11 U.S.C. section 1325(a)(4).

avoid the appearance of debt peonage. House Report, supra, at 120–121, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 6080–6082.

Had Congress set a mandatory time period during which a debtor had to work for his creditors, it would have run afoul of the spirit, if not the letter, of the 13th Amendment to the U.S. Constitution. The 13th Amendment provides that:

Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Section 2. Congress shall have power to enforce this article by appropriate legislation.

U.S.Const. Amend. XIII

The words involuntary servitude have a larger meaning than slavery. It was meant to ban peonage, the essence of which is compulsory service in payment of a debt. *Bailey v. Alabama*, 219 U.S. 219, 241–242, 31 S.Ct. 145, 151, 55 L.Ed.2d 191 (1911).

The voluntary nature of Chapter 13 does not remove it from the purview of the 13th Amendment.

Peonage is sometimes classified as voluntary or involuntary, but this implies simply a difference in the mode of origin, but none in the character of the servitude. The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by some provision of law. But peonage, however created, is compulsory service, involuntary servitude.

*Bailey*, supra, at 243, 31 S.Ct. at 152.

## CONCLUSION

It is clear from the language of the statute and the legislative history that the plan may provide that payments be made over any time period so long as that period does not exceed three years. A plan which provides for payments over a period of less than three years complies with section 1322(c) and section 1325(a)(1). *In re Arm-*

*strong*, 6 BCD 259, 3 B.R. 615 (Bkrtcy.D.Or. 1980).

For the foregoing reasons, the trustee's motion is denied.

So Ordered.